

# NUMBER 13-19-00464-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

RAMIRO RUBIO,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

---

## On appeal from the 347th District Court
## of Nueces County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Tijerina**

Appellant Ramiro Rubio pleaded guilty to the offense of possession of a controlled substance in an amount of more than four grams but less than 200 grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115; TEX. PENAL CODE ANN. § 12.33(a). The trial court placed him on deferred-adjudication community supervision for a period of five years. Thereafter, the trial court revoked Rubio's community supervision,

adjudicated him guilty, and sentenced him to twenty years' imprisonment. By a single issue, Rubio argues his sentence is excessive and disproportionate. We affirm.

## I.  BACKGROUND

On October 25, 2018, Rubio pleaded guilty to the offense of possession of a controlled substance in an amount of more than four grams but less than 200 grams. The trial court placed him on deferred adjudication for a period of five years. On February 22, 2019, the State filed a motion to revoke alleging numerous violations of Rubio's community supervision. On March 20, 2019, the State filed an amended motion to revoke, alleging Rubio violated the following terms of his community supervision: committed the offense of sexual assault in Nueces County; used marijuana, methamphetamine, and Xanax; associated with persons who illegally sell Xanax; left Nueces County without permission; failed to report a change of residence; failed to pay several fees and was in arrears; and possessed ammunition.

At the motion to revoke hearing, Rubio pleaded true to all of the State's alleged violations except the allegations of sexual assault, failure to report a change of residence, and possession of ammunition. A community supervision officer testified that he went to Odem, Texas in San Patricio County to do a home search of Rubio's living quarters. In the Odem home, which was not listed as Rubio's residence, the officer encountered Rubio, Rubio's father, and Rubio's mother. Rubio's father told the officer that Rubio "stays there" and stays in Robstown in Nueces County. Rubio's father led them inside a room that was labeled "Ram's Room. Knock wait and listen." In that room, the officers discovered a box of ammunition, shotgun shells, loose pills, women's jewelry, Rubio's

2

driver's license, and clothing. It appeared to the officer that Rubio was living at that residence.

The officer headed to Rubio's Robstown home in Nueces County, which was the address listed as Rubio's residence in his file. When the officer arrived and stated the reason for his visit, Rubio's aunt led him to a room. The officer stated the room was completely bare with only an air mattress and very few items of clothing. It did not appear to the officer that Rubio was living there.

The State presented two alleged sexual assault victims that claimed Rubio sexually assaulted them on February 13, 2019 at the Odem home in San Patricio, County. A.P. testified that she got into an argument with her family, and her friend suggested she leave with Rubio. A.P. stated that she got into a car "with a man [she] did not know," and the man stated his name was Ram.[1] He offered her Xanax and methamphetamine. A.P. was already under the influence of methamphetamine, but she smoked more methamphetamine in Rubio's vehicle. She claims Rubio took her to his bedroom where he attempted to sexually assault her. According to A.P., Rubio tried taking off her pants, but she kept fighting and kicking him. A.P. claims Rubio only stopped assaulting her because he finally answered his phone. Rubio stated, "people were coming by" and for A.P. to "fix herself."

That is when C.M., the second alleged victim, arrived. The State called C.M. to testify, but she kept crying and was unable to compose herself.

A sexual assault nurse examiner testified that she evaluated C.M. for an alleged

---

[1] We note that A.P. identified Rubio as "Ram" in her testimony.

sexual assault. The nurse testified according to C.M.'s medical history that C.M. reported they were all in Rubio's garage, when Rubio led her to a back room. Rubio gave C.M. Xanax and methamphetamine, locked the door to his room, pushed her, unbuckled his pants, and told her to dance on top of him. C.M. kept saying no, but Rubio covered her mouth, threw her onto the bed, and proceeded to penetrate her vagina with his penis multiple times. C.M. reported that Rubio was too heavy, so she could not break free. When Rubio heard banging on his bedroom door, he pushed C.M. into the restroom.

Odem Police Officer Matthew Salazar testified that he was dispatched to the hospital regarding the alleged sexual assault. When he encountered C.M., she was emotionally distraught, crying, and unable to focus on the questions at hand. Instead, Salazar conducted the interview the next day, so that C.M. would be calmer. C.M. led Salazar to the Odem home where she lost her composure.

The trial court found that Rubio violated the conditions of his community supervision as alleged in the State's motion to revoke based upon his pleas of true. Furthermore, the trial court found that Rubio possessed ammunition because it was in the room where Rubio was staying while he was on community supervision. Additionally, the trial court found that Rubio did not report his change of address as alleged in the State's motion. Based on the testimony of A.P., Officer Salazar, and the nurse, the trial court found that if Rubio committed any sexual assault offenses, he did so in San Patricio County and not in Nueces County as the State alleged in its motion to revoke. Nonetheless, the trial court found that Rubio committed the other violations, revoked his community supervision, adjudicated him guilty, and sentenced him to twenty years'

4

confinement. The trial court stated: "The sentence that I imposed has nothing to do with the sexual assault that you may or may not have committed. I want you to understand that." Specifically, the trial court found that Rubio:

> has continued to violate the conditions of his probation even though he was on probation for a very short time. And for someone who violates conditions of his probation so soon after entering a plea of guilty and being placed on probation, that person indicates to the court that that person just does not want to be on probation. Ordinarily, if there were no other violations other than substance abuse and failure to report, it may be appropriate to put the defendant back on probation under some other treatment program. But in this case, there is ample evidence that the ammunition was found in a room that the defendant had control of and under the definition of possession, the defendant was in possession of ammunition. That kind of ammunition is dangerous and can be deadly and can cause serious bodily injury to other persons. We see it unfortunately too many times in this country.

This appeal followed.

## II. PRESERVATION OF ERROR

Rubio argues that his sentence is excessive and disproportionate because the Eighth Amendment forbids cruel and unusual punishment. *See* U.S. CONST. amend. VIII. The State asserts Rubio failed to preserve error on this issue.

To preserve a complaint for appellate review that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a); *Wynn v. State*, 219 S.W.3d 54, 61 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that a defendant's failure to object to his life sentence of imprisonment as cruel and unusual punishment waived error); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (holding a defendant could not assert cruel and unusual punishment for the first time on appeal).

5

After the trial court announced its sentence at the punishment hearing, Rubio failed to object based on a violation of his Eighth Amendment right. Accordingly, we hold that he has failed to preserve his Eighth Amendment complaint for review. Even if Rubio had preserved error for our review, he was convicted of the offense of possession of a controlled substance in an amount of more than four grams but less than 200 grams, a second-degree felony, which shall be punished by imprisonment for any term of not less than two years' incarceration to no more than twenty years. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115. Therefore, his sentence of twenty years is within the punishment range. *See Trevino v. State*, 174 S.W.3d 925, 927 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd) (holding that punishment within the statutory range is not cruel and unusual). We overrule his sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
10th day of June, 2021.